UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICHOLE GWINNETT,

    Plaintiff,

v.                              Case No.: 2:19-cv-295-FtM-38MRM

SOUTHWEST FLORIDA REGIONAL
PLANNING COUNCIL,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendant Southwest Florida Regional Planning Council's (the "Council") Motion to Dismiss (Doc. 14) and Plaintiff Nichole Gwinnett's response in opposition (Doc. 17). The Court ordered supplemental briefing (Doc. 18), and those responses are here (Docs. 22; 23). For these reasons, the Court grants the Motion.

## **BACKGROUND**[2]

This is a First Amendment retaliation case. (Doc. 1). The case is not about a citizen's freedom of speech, rather it concerns a public employee's right not to speak about private matters. (Doc. 1 at 5).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Below are the facts as pled in the Complaint (Doc. 1), which the Court accepts as true. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

Before last year, Gwinnett worked at the Council without incident. (Doc. 1 at 3). Then, Gwinnett and a coworker went to an out-of-town work conference. (Doc. 1 at 3). After the conference ended, the coworker was assaulted. (Doc. 1 at 3). She confided the details of the incident to Gwinnett before contacting the police. (Doc. 1 at 3). When the police arrived, Gwinnett's supervisor from the Council called and insisted on an explanation of the incident. (Doc. 1 at 3). But Gwinnett refused, directing the supervisor to the police. (Doc. 1 at 3). The supervisor continued pressing Gwinnett for information without success. (Doc. 1 at 4). Eventually, the supervisor demanded Gwinnett disclose the intimate details of the incident or be fired. (Doc. 1 at 4). Still, Gwinnett refused to speak because it was a private matter unrelated to work. (Doc. 1 at 4). At that point, Gwinnett resigned. (Doc. 1 at 4).

Now, Gwinnett sues the Council for First Amendment retaliation under 42 U.S.C. § 1983. (Doc. 1 at 5-6).

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* So the pleading must contain "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

The Motion is broken into three parts: first, a jurisdictional challenge; second, argument related to an extrinsic document; and third, the 12(b)(6) attack.

### A. Jurisdiction

First, the Council takes aim at jurisdiction. (Doc. 14 at 3-5). But it misses the mark. Because there is not diversity and Gwinnett fails to allege a sufficient claim, says the Council, there is no jurisdiction. Yet on its face, the Complaint invokes federal question jurisdiction by alleging a First Amendment violation under § 1983. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("[F]ederal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)."). So diversity is irrelevant. And the balance is an attack on the sufficiency of the claim under Rule 12(b)(6), not jurisdiction under Rule 12(b)(1). *E.g.*, *Howard v. Wilkinson*, 305 F. Supp. 3d 1327, 1334 (M.D. Fla. 2018) ("A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint."). To the extent the Council moves to dismiss for lack of jurisdiction, the Motion is denied.

### B. Four Corners of the Complaint

Next, the Council points to Gwinnett's formal grievance and a text message, which are outside the Complaint. (Doc. 14 at 5-8; 14-1). That is usually a no-no at the motion to dismiss stage. And this case is not an exception to the rule.

A motion to dismiss typically transforms into summary judgment when a court considers matters outside the complaint. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). There are limited exceptions—a "district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Id.* Yet these documents are neither central to Gwinnett's claim nor undisputed. First, they are not central to the claim; the Complaint never even alludes to them. *Cf. Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225-26 (11th Cir. 2002) (holding an entire book could be considered because it was referenced in the complaint and central to the defamation claim). And second, Gwinnett disputes their authenticity. (Doc. 17 at 11 ("[T]hese documents and their context are very much disputed.")); *see Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1239 (N.D. Ala. 2012) ("[B]ecause Defendant disputes its authenticity, the court *cannot* consider the exhibit without converting to the Rule 56 summary judgment standard.").

For both reasons, the Court does not consider these documents.

## C. Sufficiency of the Claim

Finally, to state a claim for First Amendment retaliation, plaintiffs must plead (1) constitutionally protected speech; (2) an adverse consequence; (3) and a causal relationship between the protected speech and adverse conduct. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). The parties mostly fight over the first prong. The Council asserts Gwinnett's refusal to speak was unprotected. (Docs. 14 at 8-10; 22). Gwinnett disagrees and asks the Court to create a new test for public employee First Amendment retaliation cases. (Docs. 17 at 6-11; 23).

The First Amendment protects "both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Public employees are not stripped of those rights after accepting a job with the government. *Lane v. Franks*, 573 U.S. 228, 236 (2014). But the government can regulate the speech of its employees more than its citizens. *E.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006). This naturally creates a tension between the government's need to control its own employees and those employees' constitutional rights. *Lane*, 573 U.S. at 236-37. So courts balance those interests. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 568 (1968). And it all began over fifty years ago when a disgruntled teacher wrote a letter to his local newspaper—spawning a case called *Pickering*. *Id.* at 564.

After decades of refinement, *Pickering* may protect public employee speech if it first crosses a constitutional threshold: the speech must be "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418 (citing *Pickering*, 391 U.S. at 568). If not, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983)). In that event, the inquiry does not go to *Pickering*'s step-two balancing test. *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159-60, 1159 n.4 (11th Cir. 2015). The claim simply fails. *E.g.*, *Connick*, 461 U.S. at 146-49.

Speech is "of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest." *Lane*, 573 U.S. at 241 (internal quotation marks and citation omitted). In short, the speech must be on "a subject of general interest and of value and concern to the public." *Id.* (citation omitted). This "inquiry turns on the 'content, form, and

context' of the speech." *Id.* (quoting *Connick*, 461 U.S. at 147-48). Whether speech is of public concern is a question of law for courts to resolve. *Alves*, 804 F.3d at 1159.

Under a straightforward *Pickering* analysis, the Complaint is easily dismissed. It alleges Gwinnett refused to speak on a matter of private—not public—concern. (Doc. 1 at 4 ("Gwinnett's refusal to speak on such private matters that were not work-related was her exercising her First Amendment rights."); Doc. 1 at 5 ("Gwinnett's [sic] refused to waive her First Amendment rights and speak on matters of private [sic] that did not involve her own job duties.")). And Gwinnett repeatedly concedes this case is about "retaliation for *not* speaking on matters of *private* concern." *E.g.*, (Doc. 17 at 6). According to Gwinnett, she refused to speak about the assault because it was a private matter unrelated to work. (Doc. 1 at 3-5). So she did not need to disclose the intimate details the coworker entrusted with her. (Doc. 1 at 3-5). Clearly, the "main thrust" of Gwinnett's refusal to speak was private in nature, specifically to keep the incident private. *See Alves*, 804 F.3d at 1162, 1165-68 ("'[T]he relevant inquiry is not whether the public would be *interested* in the topic of the speech at issue,' it is 'whether the *purpose* of the employee's speech was to raise issues of public concern.'" (alteration accepted) (quoting *Maggio v. Sipple*, 211 F.3d 1346, 1353 (11th Cir. 2000))). The refusal to speak, therefore, was unprotected by the First Amendment. *Id.* So the Complaint fails to state a claim. *Ferrara v. Mills*, 781 F.2d 1508, 1512 (11th Cir. 1986) ("If the employee's speech cannot fairly be characterized as constituting speech on a matter of public concern, the inquiry is at an end.").[3]

---

[3] Curiously, Gwinnett alleges she made statements about the incident to the police as a citizen on a matter of public concern. (Doc. 1 at 3). But those statements are not at issue.

Gwinnett argues, however, a recent Supreme Court decision threw a wrench in the works: *Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018). In *Janus*, the Supreme Court considered whether certain public-sector agency fees amounted to compelled speech that violated the First Amendment. *Id.* at 2460. Overall, the Court held states and public-sector unions cannot extract agency fees from nonconsenting employees without violating the First Amendment, overruling *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977), which held otherwise. *Janus*, 138 S. Ct. at 2486. In doing so, the Court addressed *Pickering*. *Id.* at 2471-78. *Janus* held, where relevant, that *Pickering* did not apply in that scenario and *Abood* was not based on *Pickering*. *Id.* at 2471-72 (citing *Harris v. Quinn*, 573 U.S. 616 (2014)). In dicta the Court continued, explaining why the *Pickering* framework did not fit neatly in the agency-fee context. *Id.* at 2472-74. One part of that discussion called *Pickering* into question in compelled speech cases. *Id.* at 2473 ("If *Pickering* applies at all to compelled speech—a question that we do not decide—it would certainly require adjustment in that context."). In the next breath, *Janus* applied the *Pickering* framework to the agency fees at issue all the same. *Id.* at 2474-78.

While the Court cannot "lightly cast aside" Supreme Court dicta, *Janus* does not change the result here. See *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) (citation omitted) ("[T]here is dicta and then there is dicta, and then there is Supreme Court dicta."). *Janus* differs because the union agency fees there were a blanket requirement for compelled speech on matters of public concern. *Janus*, 318 S. Ct. at

---

Here instead is the later refusal to speak to the supervisor on the matter as a private concern.

7

2472, 2474-77 ("[T]he union speech at issue in this case is overwhelmingly of substantial public concern."). The case is both factually distinguishable (this case does not touch on blanket compelled speech through union dues) and legally distinguishable (this case involves compelled speech on a matter of private concern). And most important, whatever the extent of its impact on *Pickering* in compelled speech cases, *Janus* did not eliminate the public-concern requirement. In fact, much of the Supreme Court's *Pickering* analysis there considered whether the agency fees amounted to speech on a matter of public concern. *Id.* at 2474-77. So neither *Pickering* nor its public-concern requirement suffered the same fate as *Abood*. *See id.* at 2486.

Before *Janus*, courts applied *Pickering* to public employee compelled speech cases with little fanfare. *See Nicholson v. Gant*, 816 F.2d 591, 593, 599-600 (11th Cir. 1987) (applying the *Pickering* framework when plaintiff objected to speech, was compelled to speak, and later fired due to the speech).[4] Gwinnett tries to distinguish this line of cases, arguing they are limited to scenarios where the compelled speech related to performance of job duties. Even if accurate, which it is not, this misunderstands the public employee speech doctrine. Gwinnett only describes half of the threshold inquiry,

---

[4] *See also Jackler v. Byrne*, 658 F.3d 225, 234-42 (2d Cir. 2011) (applying the *Pickering* framework to a compelled speech case); *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 715-19 (6th Cir. 2001) (same); *Lewis v. Cowen*, 165 F.3d 154, 161-64 (2d Cir. 1999) (same); *Padilla v. S. Harrison R-II Sch. Dist.*, 181 F.3d 992, 996-97 (8th Cir. 1999) (same); *Tunnell v. Crosby*, 657 F. Supp. 2d 1263, 1264-65 (N.D. Fla. 2009) (same); *Miller v. Davis*, 123 F. Supp. 3d 924, 940-42, 941 n.12 (E.D. Ky. 2015) (same); *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 848-55 (N.D. Ohio 2013) (same); *Phillips v. Ingham Cty.*, 371 F. Supp. 2d 918, 928-29 (W.D. Mich. 2005) (same); *see also Berry v. Bailey*, 726 F.2d 670, 673-76 (11th Cir. 1984) (applying the *Pickering* framework to a case involving a public employee's refusal to follow an order); *Sykes v. McDowell*, 786 F.2d 1098, 1103-05 (11th Cir. 1986) (concluding that employee's refusal to speak was protected, relying on *Berry*, *Connick*, and another case that applied *Pickering*).

relating to whether an employee spoke as a citizen or employee. *See Garcetti* 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline"); *Lane*, 573 U.S. at 238-41. But it ignores the other half, public concern, which has been the touchstone of public employee speech cases for decades. *E.g.*, *Connick*, 461 U.S. at 154 ("[T]he First Amendment's primary aim is the full protection of speech upon issues of public concern, as well as the practical realities involved in the administration of a government office.").

Still, Gwinnett believes *Janus* changed everything and *Pickering* does not apply because this is a case of compelled speech. Without citing a single authority that says as much, Gwinnett instead relies on distinguishable cases in which the government was regulating or compelling speech of its citizens.[5] She also points to a different circumstance where a state conditioned employment on taking an oath. *Cole v. Richardson*, 405 U.S. 676 (1972) (plurality opinion) (holding an oath to oppose a forceful, violent, or illegal overthrow of the government was constitutional). None of those situations though control this public employee speech case because it is black-letter law

---

[5] *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) (compelling students to salute and recite Pledge of Allegiance); *Frazier v. Alexandre*, 555 F.3d 1292 (11th Cir. 2009) (Barkett, J., dissenting) (compelling students to recite Pledge); *Wooley v. Maynard*, 430 U.S. 705 (1977) (compelling citizens to bear political message on license plates); *Cressman v. Thompson*, 798 F.3d 938 (10th Cir. 2015) (same); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988) (regulating certain charitable contributions violated the First Amendment); *Pac. Gas and Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1 (1986) (plurality opinion) (compelling speech in bills from a private company to its customers); *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) (compelling Boy Scouts to admit individuals violated their right of association).

9

that the calculus is different when the government acts as employer. *E.g.*, *Garcetti*, 547 U.S. at 418 ("A government entity has broader discretion to restrict speech when it acts in its role as employer."). One recent case did not apply *Pickering* to public employee compelled speech. *Guardiola v. Adams Cty. Sch. Dist. No. 14*, No. 1:18-cv-03230-RM-NRN, 2019 WL 1763245 (D. Colo. Apr. 22, 2019). In *Guardiola*, a court recognized that *Pickering* governs public employee speech cases, then—without discussion—it applied a standard for government-compelled citizen speech. *Id.* at *2-4. That case is not controlling, and the lack of analysis makes it unpersuasive. But also, *Guardiola* is distinguishable because, unlike here, the compelled speech there was on a matter of public concern. *Id.* at *2-4 ("Plaintiff was retaliated against because of his association with [a group] and the refusal of [the group's] board members to publicly support the [school district]."). To the contrary, several post-*Janus* courts concluded *Pickering* still applies to compelled speech. *See Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-cv-753, 2019 WL 4222598, at *13-17 (S.D. Ohio Sept. 5, 2019) (applying *Pickering* to a compelled speech claim); *Jordahl v. Brnovich*, 336 F. Supp. 3d 1016, 1044-48 (D. Ariz. 2018) (same).

Even if the Court reached Gwinnett's proposed test, it is unavailing. Gwinnett proposes this new test: "(1) whether the public employer sought to compel speech, (2) to which the employee objects and (3) which is private speech unrelated to the discharge of the employee's job duties." (Doc. 23 at 5). To be sure, this is a creature of Gwinnett's creation without citation to any authority. (Doc. 23 at 5-6). And the practical problems with such a test are endless.

Take this for example. Say a nosey supervisor was keen on knowing what a public employee brought for lunch. After the supervisor presses the employee to divulge that private information, the employee refuses. So the supervisor threatens the employee to speak or be fired. Is that a First Amendment violation? Under *Pickering*, no because the public cares not whether a government employee brought turkey or ham for lunch. Obviously, this would be a terrible reason to fire an employee. But at-will public employees can be fired for "a good reason, bad reason, or no reason at all," just not for an unconstitutional reason. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 606 (2008) (internal quotation marks and citation omitted). On the contrary, Gwinnett's test would hold the public employer liable for that encounter as First Amendment retaliation. This would eschew decades of settled understanding that the First Amendment "does not empower [public employees] to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick*, 461 U.S. at 154). And it contravenes the matter of public concern requirement first articulated in *Pickering*. *Pickering*, 391 U.S. at 574 (A public employee's "exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal.").

Absent a contrary ruling from the Supreme Court or Eleventh Circuit, the Court must apply the *Pickering* framework to this case. Because the speech here is on a matter of private concern, it is not entitled to First Amendment protection. *E.g.*, *Alves*, 804 F.3d at 1165-68. On these facts, Gwinnett may have an employee grievance or some other action, but she has no First Amendment claim. To conclude otherwise ignores fifty years of Supreme Court precedent and turns countless disputes between public employees and employers into constitutional matters. While the Court appreciates Gwinnett presenting

this "unique occasion" to "develop a proper test in a First Amendment compelled speech case," there is no need to be the canary in that constitutional coal mine. (Doc. 23 at 1).

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. 14) is **GRANTED**.

2. Plaintiff's Complaint (Doc. 1) is **DISMISSED without prejudice**.

3. Plaintiff may **FILE** an amended complaint on or before **September 30, 2019**.

**DONE** and **ORDERED** in Fort Myers, Florida this 16th day of September, 2019.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record